E-FILED
Friday, 24 April, 2020  04:46:47 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 00-cr-20051 |
| | ) | |
| DENNIS COLES, | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION AND ORDER

**SUE E. MYERSCOUGH, U.S. District Judge.**

Defendant Dennis Coles, an inmate at FCI Elkton, has filed a Motion for Compassionate Release requesting a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A).  See Pro Se Motion, d/e 217.  The request raises issues of jurisdiction and eligibility.  For the reasons stated below, Defendant Coles' motion is GRANTED.

### BACKGROUND

On July 23, 2002, a jury returned a verdict finding Defendant Coles guilty of possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g) and 924(e).  See Verdict, d/e 102; Judgment, d/e 130.  On February 14, 2003, Defendant was sentenced to 293

months of imprisonment followed by a 5-year term of supervised release and a $100 assessment.  <u>See</u> Judgment, d/e 130. Defendant began his term of imprisonment at FCI Cumberland on March 17, 2003.  <u>See</u> d/e 136.  Sometime after, Defendant was transferred to FCI Elkton.  <u>See</u> Pro Se Motion, d/e 217.

On April 14, 2020, Defendant filed a pro se motion for compassionate release and a supplemental pro se motion.  <u>See</u> Pro Se Motions, d/e 217, 226.  Counsel was appointed for Defendant and filed two additional motions and other briefing on the issue. <u>See</u> Motion, d/e 220; Supplemental Motion, d/e221; Reply, d/e 225; Supplemental Authority, d/e 227.  The Government also filed several responses.  <u>See</u> Response, d/e 224; Supplemental Response, d/e 231; Second Supplemental Response, d/e 232; Third Supplemental Response, d/e 236.  Prior to a hearing on the Defendant's motion, Defendant filed a copy of the Defendant's request to the warden of FCI Elkton.  <u>See</u> Exhibit, d/e 237.  On April 24, 2020, the Court held a video conference hearing on Defendant's motion.  The Court heard testimony from Defendant Coles' wife, Kimberly Coles, a statement made by Defendant Coles, and oral arguments.

As of April 23, 2020, BOP reports that FCI Elkton has 100 confirmed cases of COVID-19, consisting of 52 inmates and 48 staff.  Six have died, all inmates.  <u>See</u> Federal Bureau of Prisons – COVID-19 Cases, <u>https://www.bop.gov/coronavirus/</u> (last accessed April 23, 2020).

Defendant suffers from hypertension, prostate and bladder issues, is prediabetic, and has pulpitis (dental infection).  <u>See</u> Medical Records, d/e 223.  Defendant takes Hydrochlorothiazide 25 mg tablets for his hypertension and Tamsulosin HCI 0.4 mg capsules for his prostate issues.  <u>Id.</u>  Defendant Coles is also 6 feet tall and weighs 249 pounds.  <u>See</u> Medical Records, d/e 230, pgs. 2, 25.

Defendant has served over 19 years of his 24-year sentence.  See Motion, d/e 220, p. 1.  His projected release date is November 1, 2020.  <u>Id.</u> at p. 2.  Defendant requests early release in advance of that date due to his risk of contracting COVID-19 if he remains at FCI Elkton.  <u>Id.</u>

Defendant made a request to BOP for a sentence reduction on April 4, 2020.  See Exhibit, d/e 237.  The Warden at FCI Elkton has not yet responded.  <u>See</u> Motion, d/e 220, p. 3.

The Government objects to Defendant's request, arguing that this Court lacks jurisdiction to hear Defendant's motion as Defendant has not exhausted the administrative remedies under § 3582(c)(1)(A).  The Court finds that it has jurisdiction to hear Defendant's motion and the exhaustion requirement of § 3582(c)(1)(A) can be waived.

## DISCUSSION

Although criminal judgments resulting in a sentence of imprisonment are final judgments, [1] Congress has carved out specific exceptions to allow reconsideration of a criminal judgment.

Pursuant to Section 603(b)(1) of the First Step Act, the statutory language allowing for compassionate release under 18 U.S.C. § 3582(c)(1)(A) was amended.  See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194.  Prior to the First Step Act, the only mechanism for Court intervention was if the Director of the BOP sought court review.  With the enactment of the First Step Act, the statute now allows an inmate to file with the district court a motion for modification of the sentence, but only after either

---

[1] See Dillon v. United States, 560 U.S. 817, 825 (2010).

exhausting administrative review of a BOP denial of the inmate's

request or after 30 days have passed since the inmate made his or

her request, whichever is earlier.  The statute now provides as

follows:

> The court, upon motion of the Director of the Bureau of
> Prisons, or upon motion of the defendant after the
> defendant has fully exhausted all administrative rights to
> appeal a failure of the Bureau of Prisons to bring a motion
> on the defendant's behalf or the lapse of 30 days from the
> receipt of such a request by the warden of the defendant's
> facility, whichever is earlier, may reduce the term of
> imprisonment (and may impose a term of probation or
> supervised release with or without conditions that does
> not exceed the unserved portion of the original term of
> imprisonment), after considering the factors set forth in
> section 3553(a) to the extent that they are applicable, if it
> finds that—
>
> > (i) extraordinary and compelling reasons warrant
> > such a reduction . . . and that such a reduction is
> > consistent with applicable policy statements issued
> > by the Sentencing Commission.

18 U.S.C. 3582(c)(1)(A).

Here, Defendant has failed to satisfy either exhaustion

requirement.  See Motion, d/e 220, p. 3.  Defendant argues that the

Court has the authority to waive compliance with the statutory

exhaustion requirement.  Id.  The Government opposes such

argument and argues that the Court lacks jurisdiction to hear the

2:00-cr-20051-SEM-TSH   # 238   Page 6 of 21

motion as exhaustion is mandatory based on the plain language of the statute.  <u>See</u> Response, d/e 224, p. 6.

## A. Jurisdiction

Federal courts are of limited jurisdiction.  <u>Exxon Mobil Corp. v. Allapattah Servs. Inc.</u>, 545 U.S. 546 (2005).  Without jurisdiction, this Court cannot hear Defendant's request for compassionate release.  <u>See</u> <u>Henderson ex rel. Henderson v. Shinseki</u>, 562 U.S. 428, 434 (2011).

An important distinction exists as to whether a procedural rule is a jurisdictional requirement or a claim-processing rule. <u>See</u> <u>id.</u> ("This question is not merely semantic but one of considerable practical importance for judges and litigants."); <u>Reed Elsevier, Inc. v. Muchnick</u>, 559 U.S. 154, 160 (2010).   Therefore, "a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction." <u>Henderson,</u> 562 U.S. at 435.  Claim-processing rules "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." <u>Id.</u>

Page **6** of **21**

The U.S. Supreme Court adopted a "bright-line" test for deciding when to classify a procedural rule as jurisdictional. Arbaugh v. Y & H Corp., 546 U.S. 500, 515-16(2006).  The inquiry is whether Congress has "'clearly state[d]'" that the rule is jurisdictional."   Sebelius v. Auburn Reg'l Med. Ctr., 568 U.S. 145, 153 (2013).  "Absent such a clear statement . . . courts should treat the restriction as nonjurisdictional in character."  Id.

In United States v. Taylor, the Seventh Circuit held that Section 3582(c)(2) is a nonjurisdictional rule, overruling previous cases decided by the Seventh Circuit.  778 F.3d 667, 671-672 (7th Cir. 2015) ("A district court has subject-matter jurisdiction to consider a motion for relief under 18 U.S.C. § 3582(c)(2) regardless of whether the moving defendant is actually eligible for such discretionary relief.").

While Taylor did not address § 3582(c)(1)(A) specifically, Taylor's reasoning is equally applicable to § 3582(c)(1)(A).  The Court finds that Congress did not "clearly state" in § 3582(c)(1)(A) that the exhaustion requirement is jurisdictional.  Therefore, the Court finds that the exhaustion requirement found in 18 U.S.C. § 3582(c)(1)(A) is not jurisdictional, and instead, is a claim-processing

rule.  See Henderson, 562 U.S. at 435 ("Such language merely requires "that the parties take certain procedural steps at certain specified times."); United States v. Haney, 2020 WL 1821988 at *2 ("The exhaustion requirement provides "who -- the BOP or defendant -- may move for compassionate release and when such a motion may be made.").

## B. Waiver of the Exhaustion Requirement

Although the Court has jurisdiction to hear Defendant's motion, Defendant has not met the exhaustion requirement of the statute.  The Court must determine whether it has the authority to waive the 30-day period of the exhaustion requirement.  The Government argues that only it has the power to waive the 30-day requirement, not the Court.

Even in the short time the pandemic has wreaked havoc on this nation, many federal courts have considered this issue and are divided on whether the exhaustion requirement can be waived. Some courts have found that the court has discretion to waive the 30-day requirement in light of the serious risks associated with COVID-19.  See e.g., United States v. Scparta, 2020 WL 1910481 (S.D.N.Y. April 19, 2020); United States v. Guzman Soto, Case No.

18-10086 (D.Mass. April 17, 2020); United States v. Russo, 2020 WL 1862294 (S.D.N.Y. Apr. 14, 2020); United States v. Smith, 2020 WL 1849748 (S.D.N.Y. Apr. 13, 2020); United States v. Bin Wen, 2020 WL 1845104, at *4-7 (W.D.N.Y. Apr. 13, 2020); United States v. Haney, 2020 WL 1821988 at *1 (S.D.N.Y. Apr. 13, 2020); United States v. Sawicz, 2020 WL 1815851 at *2 (E.D.N.Y. Apr. 10, 2020); United States v. McCarthy, 2020 WL 1698732 (D. Conn. Apr. 8, 2020); United States v. Colvin, 2020 WL 1613943, at *2 (D.Conn. Apr. 2, 2020); United States v. Perez, 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020).  Other courts have held the 30-day requirement is mandatory, not subject to any exception.  See e.g., United States v. Cox, 2020 WL 1923220, at *1 (S.D. Ind. Apr. 21, 2020); United States v. Demaria, 2020 WL 1888910 (S.D.N.Y. Apr. 16, 2020); United States v. Rensing, 2020 WL 1847782, at *1 (S.D.N.Y. Apr. 13, 2020); United States v. Roberts, 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020); United States v. Woodson, 2020 WL 1673253, at *2 (S.D.N.Y. Apr. 6, 2020).

Equitable exceptions to statutory rules have been recognized in the past. See Holland v. Florida, 560 U.S. 631, 645-46 (2010) (noting that "a nonjurisdictional federal statute of limitations is

normally subject to a rebuttable presumption in favor of equitable tolling."); Hamer v. Neighborhood Hous. Servs. of Chicago, 138 S. Ct. 13, 18 n.3 (2017) (reserving on the issue of "whether mandatory claim-processing rules may be subject to equitable exceptions" other than waiver and forfeiture).  Other circuit courts have recognized equitable exceptions since the Supreme Court decision in Ross v. Blake, 136 S. Ct. 1850 (2016).  See Grewal v. Cuneo Gilbert & LaDuca LLP, 2020 WL 897410 (2d Cir. Feb. 25, 2020) ("We have held that Rule 4(a)'s 28-day deadline is not jurisdictional, but is a 'claim-processing rule' and, as such, its enforcement is subject to waiver, forfeiture, and other equitable exceptions."); Fed. Ins. Co. v. United States, 882 F.3d 348, 361 (2d Cir. 2018) ("Claim-processing rules, much like statutes of limitations, ... may be subject to equitable tolling doctrines.").  In Scparta, the Government recognized that the exhaustion requirement is subject a waiver exception, but only the Government can waive exhaustion, not the court.  Scparta, 2020 WL 1910481, *5.

The Government urges the Court to consider the plain language of the statute to establish that the exhaustion remedy is mandatory.  The Government relies on Ross to argue that the Court

does not have discretion to create an exception to the exhaustion requirement.  In <u>Ross</u>, the Supreme Court considered the exhaustion requirements of the Prison Litigation Reform Act ("PLRA").  136 S. Ct. 1850.  Pursuant to the PLRA, "no action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted."  <u>Id.</u> at 1856.  The Supreme Court held the exhaustion of administrative remedies of the PLRA are mandatory because the statutory language "suggests no limits on an inmate's obligation to exhaust."  Like <u>Ross</u>, the exhaustion requirement at issue here is imposed by statute, rather than by case law.[2]  <u>Id.</u> at 1857 (" . . . statutory exhaustion provision stands on a different footing. There, Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to.").

The statutory text of § 3582(c)(1)(A) and the congressional intent for implementing amendments to that section substantially differ from the PLRA.  Congress amended 42 U.S.C. § 1997e(a) to

---

[2] This is not a situation of a judicially created exhaustion requirement.  If such were the case, this Court would have discretion.  <u>McCarthy</u>, 503 U.S. at144 ("Where Congress has not clearly required exhaustion, sound judicial discretion governs.").

make "exhaustion provisions mandatory rather than directory."
Historical and Statutory Notes, 42 U.S.C.A. § 1997e (West
Supp.1997).  Quite the opposite is true for § 3582(c)(1)(A) where the
First Step Act expanded the avenues a defendant can use to file a
motion in federal court.  See supra, p. 4.

As the Court in Haney recognized, § 3582(c)(1)(A) is not "an
exhaustion requirement in the traditional sense."  2020 WL
1821988, *3.  Section 3582(c)(1)(A) does not require the inmate to
fully exhaust BOP procedures before coming to court.  The PLRA
does require full exhaustion of available administrative remedies.
See Guzman Soto, Case No. 18-cr-10086, p. 9 ("This alternative to
exhaustion suggests that Congress understood that some requests
for relief may be too urgent to wait for the BOP's process."); Haney,
2020 WL 1821988, *3 ("But the hybrid requirement in this statute -
- either exhaust or wait 30 days – substantially reduces the
importance of the first purpose, as it allows a defendant to come to
court before the agency has rendered a final decision.").  This Court
agrees with the reasoning expressed in Guzman Soto, which
provided:

> While a court may certainly decline to consider a motion
> where Defendant has not waited thirty days, nothing in
> the statutory scheme suggests that Congress intended to
> preclude the court from exercising judicial discretion and
> to take into account timeliness and exigent
> circumstances related to why the defendant seeks
> compassionate release.

Guzman Soto, Case No. 18-cr-10086, p. 9-10.

Mandating the exhaustion requirement in this case and other cases around the country during the COVID-19 pandemic cannot be what Congress intended.  Based on the House Report for the First Step Act, the statute is designed to "enhance public safety" and "make . . . changes to Bureau of Prisons' policies and procedures to ensure prisoner and guard safety and security."  H.R. Rep. 115-699 at 22; see also Scparta, 2020 WL 1910481, *7. Denying Defendant's motion without reaching the merits, only to order Defendant to wait a little over one week to refile his request with this Court, would certainly frustrate these purposes.  In that one-weeks' time, Defendant is at a high risk of contracting a deadly illness based on the realities of BOP facilities, causing him irreparable harm and rendering his request futile.

The Court is not overstating the risk.  Conditions at FCI Elkton were recently addressed by the Northern District of Ohio

after a group of inmates at FCI Elkton filed an emergency habeas
action seeking release from Elkton due to the spread of COVID-19.
The court ordered injunctive relief aimed at identifying vulnerable
individuals' eligibility for transfer based on compassionate release,
parole or community supervision, transfer furlough, or non-transfer
furlough.  Inmates ineligible for compassionate release, home
release, or parole or community supervision must be transferred to
another BOP facility where more appropriate measures are in
place.[3]  Wilson, et al. v. Williams, et al., 4:20-cv-00794, d/e 22, p.
21 (N.D. Ohio April 22, 2020) ("while the deteriorating health
conditions at Elkton pose a danger for each of the 2,400 men who
are incarcerated at Elkton, the institution's inability to stop the
spread of the virus among the inmates in its care poses an even
greater risk for inmates whose medical conditions put them at
higher risk of death if they contract the virus.").

The Court concludes that § 3582(c)(1)(A) does not require the
Court to wait to consider a compassionate release request if there is

_____

[3] Defendant does not qualify as a class member in Wilson as his health
conditions are not part of the defined "Medically-Vulnerable Subclass."  See
Wilson, p. 7.

a credible claim of serious and imminent harm from this pandemic.

That does not mean the Court will waive the 30-day period in all

cases.  The decision must be made on a case-by-case basis.  In this

case, the Court finds that the 30-day requirement should be

waived.  The Court excuses Defendant Coles' failure to wait 30 days

to seek relief pursuant to 18 U.S.C. § 3582(c)(1)(A).

### C. Extraordinary and Compelling Reasons for Release

As Defendant's motion is properly before the Court, the next

issue is whether Defendant is eligible for compassionate release.

When assessing a defendant's motion for compassionate release

pursuant to § 3582(c)(1)(A), a court:

> may reduce the term of imprisonment (and may impose a
> term of probation or supervised release with or without
> conditions that does not exceed the unserved portion of
> the original term of imprisonment), after considering the
> factors set forth in section 3553(a) to the extent that they
> are applicable, if it finds that—
>
>> (i)extraordinary and compelling reasons warrant
>> such a reduction . . . and that such a reduction is
>> consistent with applicable policy statements issued
>> by the Sentencing Commission."

18 U.S.C. § 3582(c)(1)(A).

The Court begins with the factors set out in 18 U.S.C. §

3553(a).  Defendant Coles is currently serving a 293-month term of

imprisonment for being a felon in possession of a firearm.
Defendant has spent much of his life incarcerated due to criminal
activity he committed in his young adult life.

Defendant Coles has served over 19 years of his 24-year
sentence.  Since being incarcerated, Defendant's behavior has been
near impeccable.  He has completed numerous programs at FCI
Elkton, including courses in calisthenics, parenting topics, data
entry apprentice, and AIDS awareness.  For the last nine years,
Defendant has volunteered to help suicidal inmates.  In 2014,
Defendant married a long-time friend and has maintained a good
relationship with his wife.  Defendant has accepted responsibility
for his conduct and is remorseful.  The Court has reconsidered the
factors in § 3553(a) and concludes that they entitle Defendant to
compassionate release.

The Court must also consider whether "extraordinary and
compelling reasons warrant such a reduction" and is "consistent
with applicable policy statements issues by the Sentencing
Commission."  18 U.S.C. § 3582(c)(1)(A).  The relevant policy
statement, Section 1B1.13 of the Sentencing Guidelines, explains
that a sentence reduction under § 3582(c)(1)(A) may be ordered

where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that "(1)(A) extraordinary and compelling reasons warrant the reduction; ... (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13 (2018).

Commentary to Section 1B1.13 provides certain circumstances constituting "extraordinary and compelling reasons" that warrant a sentence reduction.[4] U.S.S.G. § 1B1.13 cmt. n. 1. One of the circumstances is where a defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n. 1(A).

The spread of the novel coronavirus, more specifically COVID-19, has presented extraordinary and unprecedented challenges for

---

[4] The Court notes that Section 1B1.13 of the Sentencing Guidelines has not been amended to reflect all of the additional language added to 18 U.S.C. 3582(c)(1)(A). As it stands, Section 1B1.13 only refers to a reduction "upon the motion of the Director of the Bureau of Prisoners," which is not the situation here. No sentencing policy provides guidance for when a defendant files a motion. Nevertheless, the Court still considers Section 1B1.13.

the nation and poses a serious issue for prisons.  Due to the
infectious nature of the virus, the CDC and state governments have
advised individuals to practice good hygiene and social distancing
and isolation.  Socially distancing can be difficult for prisons.

The Northern District of Ohio has recognized the challenges to
social distancing at FCI Elkton.  The inmates at FCI Elkton live in a
"dorm-style" design, which "guarantees that inmates remain in
close proximity to one another."  Wilson, p. 3.  "With the shockingly
limited available testing and the inability to distance inmates,
COVID-19 is going to continue to spread, not only among the
inmate population, but also among the staff."  Id.

The Government argues the risk is minimal to Defendant
because reportedly there are no confirmed cases in Defendant's
unit.  Similar arguments were made in Wilson, where the
respondents called the units at FCI Elkton a "family unit" in that
each housing unit is separate from other units, visitors, and sick
inmates.  Id. at p. 5.  Yet, 150 inmates are in each housing unit.  Id.
There is a significant risk that the virus will spread to Defendant's
unit as guards and certain inmates circulate throughout the
facility.  Id. at p. 6.

Defendant is a 48-year-old African American man who is 6 feet tall and weighs 249 pounds and suffers from hypertension, prostate issues, and bladder issues, is prediabetic, and has pulpitis (dental infection).  Defendant takes medication for his hypertension and prostate issues.  He has also spent most of his life incarcerated.  All of these factors increase the serious risks of COVID-19 for Defendant.  The Centers for Disease Control ("CDC") has identified hypertension as a comorbidity that increases the likelihood of serious risk from COVID-19.  <u>See</u> Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease, Centers for Disease Control and Prevention, [https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html](https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html) (last accessed April 24, 2020) ("Patients in China with no reported underlying medical conditions had an overall case fatality of 0.9%, but case fatality was higher for patients with comorbidities: 10.5% for those with cardiovascular disease, 7.3% for diabetes, and approximately 6% each for chronic respiratory disease, hypertension, and cancer.  Heart disease, hypertension, prior stroke, diabetes, chronic lung disease, and chronic kidney disease have all been associated with increased

illness severity and adverse outcomes."); <u>Scparta</u>, 2020 WL
1910481, *9.

The Court also considers whether defendant is a danger to the
safety of any other person or to the community.  <u>See</u> U.S.S.G. §
1B1.13 (2018).  If Defendant quarantines himself at his wife's home
away from his wife and his wife's mother, it will diminish the risk of
spreading the virus. Otherwise, the Court does not find that
Defendant poses a danger to the community.

Therefore, the Court finds that Defendant Coles has satisfied
all requirements for compassionate release.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Court GRANTS Defendant Coles'
motion for compassionate release (d/e 220, 221).  The Court
DENIES AS MOOT the pro se motions filed by Defendant Coles (d/e
217, 226).  The Court hereby reduces Defendant Coles' term of
imprisonment from 293 months to time served.  The Court modifies
Defendant Coles' term of supervised release to include 18 months of
home confinement.  Therefore, Defendant Coles must serve a term
of 5 years of supervised release with the first 18 months being
served in home confinement.  Defendant shall be monitored by

location monitoring, GPS monitoring, or telephonic monitoring as approved by the U.S Probation.  Defendant is required to contact his probation officer as ordered at the hearing on April 24, 2020. All other conditions in the original judgment remain imposed.

The Government and the Bureau of Prisoners are ORDERED to release Defendant Coles within the next 24 hours of the filing of this Order.  Defendant Coles must self-quarantine for a period of 14 days beginning at the time of his release, including while he travels from Elkton to his wife's home.

**ENTERED: April 24, 2020.**
**FOR THE COURT:**

                    **s/Sue E. Myerscough**
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**